**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| VIACOM INTERNATIONAL INC. and PAWS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A," <br><br> Defendants. | Case No. 26-cv-00318 |

**COMPLAINT**

Plaintiffs Viacom International Inc. and Paws, Inc. (collectively referred to herein as "Paramount" or "Plaintiffs"), by their undersigned counsel, hereby bring the present action against the Partnerships and Unincorporated Associations Identified on Schedule A attached hereto (collectively, "Defendants") and allege as follows:

## I.  JURISDICTION AND VENUE

1.     This Court has original subject matter jurisdiction over Plaintiffs' claims pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, the Copyright Act 17 U.S.C. § 501, *et seq.*, 28 U.S.C. § 1338(a)-(b), and 28 U.S.C. § 1331.

2.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 and this Court may exercise personal jurisdiction over Defendants because Defendants structure their business activities so as to target consumers in the United States ("U.S."), including Illinois, through at least the fully interactive e-commerce stores operating under the aliases identified on Schedule A attached hereto (the "Seller Aliases"). Specifically, Defendants have targeted sales to Illinois

1

residents by setting up and operating e-commerce stores that target U.S. consumers; offer shipping

to the U.S., including Illinois; accept payment in U.S. dollars; and, on information and belief, sell

products using infringing and counterfeit versions of Plaintiffs' federally registered trademarks

and/or unauthorized copies of Plaintiffs' federally registered copyrighted works (collectively, the

"Unauthorized Products")[1] to residents of Illinois. Each Defendant is committing tortious acts in

Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiffs substantial injury

in the state of Illinois.

## II.    INTRODUCTION

3.    Plaintiffs filed this case to prevent e-commerce store operators who trade upon

Plaintiffs' reputation and goodwill from further selling and/or offering for sale Unauthorized

Products. Defendants advertise, offer for sale, and/or sell Unauthorized Products to unknowing

consumers through their Seller Aliases. E-commerce stores operating under the Seller Aliases

share identifiers, such as design elements and similarities of the Unauthorized Products offered for

sale, establishing that a logical relationship exists between them, and that Defendants' infringing

operation arises out of the same transaction, occurrence, or series of transactions or occurrences.

Defendants take advantage of a set of circumstances, including the anonymity and mass reach

afforded by the Internet and the cover afforded by international borders, to violate Plaintiffs'

intellectual property rights with impunity. Defendants attempt to avoid liability by operating under

one or more Seller Aliases to conceal their identities, locations, and the full scope and interworking

of their operation. Plaintiffs are forced to file this action to combat Defendants' counterfeiting of

their registered trademarks and/or infringement of their registered copyrighted works, as well as

to protect consumers from purchasing Unauthorized Products over the internet. Plaintiffs have

---

[1] Schedule A attached hereto indicates whether each Defendant is infringing Paramount's trademarks, copyrighted works, or both.

been, and continue to be, irreparably damaged through consumer confusion and dilution of their valuable trademarks and/or infringement of their copyrighted works because of Defendants' actions and therefore seek injunctive and monetary relief.

## III.   THE PARTIES

4.      Viacom International Inc. ("Viacom"), a wholly owned subsidiary of Paramount Global, is a Delaware Corporation having its principal place of business at 1515 Broadway, New York, New York 10036.

5.      Paws, Inc. ("Paws"), a wholly owned subsidiary of Paramount Global, is an Indiana Corporation having its principal place of business at 1515 Broadway, New York, New York 10036.

6.      In August 2025, Paramount Global merged with Skydance Media, LLC and is now a wholly owned subsidiary of Paramount Skydance Corporation ("Paramount Skydance"), a publicly traded company.

7.      Paramount Skydance is among the world's preeminent creators, producers, and distributors of multimedia entertainment including motion pictures, television series, web series, short form audiovisual works and other entertainment content. In addition to creating media content based on these properties that is distributed through linear cable television networks, streaming services, online and theatrical releases, Paramount Skydance offers a line of consumer products and services for each property including toys, clothing, food items, decorative items, wall stickers, personal care products, and experiences marketed towards fans of the properties.

8.      Viacom owns the world-famous Dora the Explorer, SpongeBob SquarePants, Teenage Mutant Ninja Turtles, and Blue's Clues properties.

9.      Dora the Explorer ("Dora") is one of Viacom's successful properties. Created by Chris Gifford, Valerie Walsh Valdes, and Eric Weiner in 2000, the *Dora the Explorer* television

series follows the adventures of a seven-year old Latina girl who journeys with her talking purple backpack and her monkey companion, Boots. Since the release of the first episode on August 14, 2000, a mass of Dora-related multimedia has been released, including numerous television specials, multiple spin-off series, a live-action feature film, and various video games. The Dora franchise has gained worldwide popularity through the release of these works. The *Dora the Explorer* television series has been nominated for numerous awards, including Daytime Emmy awards, and won the 2004 Peabody Award.

10.     Viacom's SpongeBob SquarePants ("SpongeBob") property follows the titular yellow sea sponge, SpongeBob, and his ensemble cast of aquatic friends on numerous adventures in the underworld Bikini Bottom setting. Since the release of the show in 1999, a mass of SpongeBob-related multimedia has been released, including television specials, multiple spin-off series, movies, and video games. The SpongeBob franchise has gained worldwide popularity through the release of these works and the *SpongeBob SquarePants* television show and related content has garnered a long list of accolades, including Emmy Awards.

11.     Teenage Mutant Ninja Turtles ("TMNT"), another one of Viacom's successful properties, was originally written as a comic book series by Kevin Eastman and Peter Laird in 1984. TMNT follows four anthropomorphic turtles who fight various forms of evil in New York City. Since the release of the first *Teenage Mutant Ninja Turtles* comic book, a mass of TMNT-related multimedia has been released, including five individual comic book series, five individual television series, seven films, and over fifty video games. The TMNT franchise has gained worldwide popularity through the release of these works.

12.     Viacom's Blue's Clues property was created by Angela C. Santomero, Taci Paige Johnson, and Todd Kessler. *Blue's Clues* is a play-along show that allows its young audience to

"step inside" and become a part of a bright, fanciful world where the host, Steve, and his animated puppy, Blue, live. The goal of the show is to empower, challenge, and build the self-esteem of preschoolers all while making them laugh. Since premiering on September 8, 1996, a mass of *Blue's Clues* multimedia has been released, including six seasons covering 177 episodes, multiple spin-off series, video games, and movies. The Blue's Clues franchise has gained worldwide popularity through the release of these works.

13.     Paws owns the Garfield property, which started on a comic strip created by Jim Davis in 1976 and quickly became the nationwide syndication *Garfield*. Set in Davis's hometown of Muncie, Indiana, Garfield follows the everyday interactions between Garfield, a lazy, fat, sarcastic orange tabby cat who loves coffee and lasagna, and hates Mondays, and his owner, Jon, a dog named Odie, and a rotating cast of side characters. Since the release of the comic strip, the Garfield character has been featured in numerous books; television shows; feature films, including the upcoming *The Garfield Movie*; and video games. The Garfield franchise has gained worldwide popularity through the release of these works.

14.     Paramount, through its licensees, markets and sells a variety of products emanating from the aforementioned famous properties (collectively, "Paramount Products").

15.     The trademarks related to the Dora, SpongeBob, and Garfield properties (collectively, the "Paramount Trademarks") are registered with the U.S. Patent and Trademark Office. A non-exhaustive list of the Paramount Trademarks is listed in the chart below:

| Registration Number | Trademark | Registration Date | Goods and Services |
|---|---|---|---|
| 1,519,950 | SHREDDER | Jan. 10, 1989 | For: Toys, namely figures for game playing in class 028. |

| 1,519,951 | DONATELLO | Jan. 10, 1989 | For: Toys, namely figures for game playing in class 028. |
|---|---|---|---|
| 1,522,761 | SPLINTER | Jan. 31, 1989 | For: Toys, namely figures for game playing in class 028. |
| 1,523,659 | RAPHAEL | Feb. 07, 1989 | For: Toys, namely figures for game playing in class 028. |
| 1,523,660 | LEONARDO | Feb. 07, 1989 | For: Toys, namely figures for game playing in class 028. |
| 1,542,711 | APRIL O'NEIL | Jun. 06, 1989 | For: Toys, namely figures for game playing in class 028. |
| 2,743,053 | MICHELANGELO | Jul 29, 2003 | For: Toys, namely figures for game playing in class 028. |
| 2,811,704 | TURTLE POWER | Feb. 03, 2004 | For: Clothing, namely, tops; T-shirts; sweatshirts; sweatpants; jogging suits; jumpsuits; sweaters; bathing suits; bathing trunks; wet suits; tights; leotards; body suits; boxer shorts, underwear; pants; skirts; pajamas; sleepwear; gloves; clothing belts; robes; socks; stockings; suspenders; raincoats; rainwear; outerwear jackets; coats; cyclists clothing, namely, shirts and shorts; pullovers; clothing wristbands; sweat-absorbent underclothing; footwear, namely, shoes; sneakers; gymnastic shoes; boots; sandals; slippers; foot muffs; overshoes; sport shoes; headgear, namely, clothing caps; skull caps; visors; hats; scarves; |

| | | | |
|---|---|---|---|
| | | | bandannas; ear muffs; ski hats; headbands; neckwarmers in class 025. |
| 1,465,387 | TEENAGE MUTANT NINJA TURTLES | Nov. 17, 1987 | For: Printed matter, namely comic books, game books, and drawing manuals in class 016. |
| 1,469,195 | TEENAGE MUTANT NINJA TURTLES | Dec. 15, 1987 | For: Toy figures, sets of miniature figurines for game playing in class 028. |
| 2,818,181 | TEENAGE MUTANT NINJA TURTLES | Feb. 24, 2004 | For: Traveling bags; namely, backpacks, wallets, umbrellas in class 018. |
| 2,826,075 | TEENAGE MUTANT NINJA TURTLES | Mar. 23, 2004 | For: Printed matter and artist's materials; namely, bookmarks; children's books; coloring books; a series of fictional children's books; trading cards; greeting cards; cards for Valentine's Day and Christmas; coloring sets with crayons, paper and numbered instructions; painting sets for children; comic books; novels; posters; cardboard cut-out character stands for decoration; sticker decal sets; stickers; theme notebooks in class 016. |
| 2,832,801 | TEENAGE MUTANT NINJA TURTLES | Apr. 13, 2004 | For: Metal key chains; metal boxes sold empty and metal tin cans sold empty in class 006. |
| 2,843,654 | TEENAGE MUTANT NINJA TURTLES | May 18, 2004 | For: Clothing, footwear and headgear; namely, cloth aprons, bandanas, bathing suits, clothing belts, children's sleepwear; boxer |

| | | | |
|---|---|---|---|
| | | | shorts, clothing caps; Halloween costumes; children's footwear; gloves; hats; ski hats; headbands; outwear jackets; jumpsuits; mittens; neckwarmers; children's pram suits; children's raincoats; robes; socks; stockings; suspenders; sweaters; sweatshirts; T-shirts; tops; underwear and visors in class 025. |
| 2,860,969 | TEENAGE MUTANT NINJA TURTLES | July 06, 2004 | For: Toys and games; namely, balloons; toy boxes, toy swim goggles; kites; Halloween costume masks; Christmas tree ornaments; ride-on toys; roller skates; skateboards; role-playing game toy play sets; miniature toy vehicles; bubble making activity toys; stuffed plush toys; miniature motorized toy vans; basketball game set containing basketball hoop, net, and basketball in class 028. |
| 2,875,370 | TEENAGE MUTANT NINJA TURTLES | Aug. 17, 2004 | For: Sugar and confectionary, namely, fruit-flavored candy, gummy candies, candy, excluding chocolate candy, sucking candy; cookies in class 030. |
| 2,875,371 | TEENAGE MUTANT NINJA TURTLES | Aug. 17, 2004 | For: Textile goods; namely, bedsheets; bedspreads, table cloths not of paper; beach towels, towels, hand towels, washcloths in class 024. |

| 2,882,475 | TEENAGE MUTANT NINJA TURTLES | Sep. 07, 2004 | For: Furniture, namely, beds, tables, chairs; pillows, goods of plastic, namely, mirrors in class 020. |
|---|---|---|---|
| 2,887,154 | TEENAGE MUTANT NINJA TURTLES | Sep. 21, 2004 | For: Household or kitchen utensils and containers; namely, plastic bottles sold empty; melamine bowls; cups; lunch boxes; toothbrushes in class 021. |
| 2,921,165 | TEENAGE MUTANT NINJA TURTLES | Jan. 25, 2005 | For: Soaps and perfumery; namely, toilet soaps and liquid soaps for hands, face and body, hair shampoo in class 003. |
| 2,971,494 | TEENAGE MUTANT NINJA TURTLES | Jul. 19, 2005 | For: Apparatus for recording transmission or reproduction of sound or images, namely, sound recording discs, recording discs, compact discs, phonograph records; magnets, namely, decorative magnets; sunglasses; hand held viewers, three dimensional viewers in class 009. |
| 2,989,983 | TEENAGE MUTANT NINJA TURTLES | Aug. 30, 2005 | For: Bandages for skin wounds in class 005. |
| 3,237,389 | TEENAGE MUTANT NINJA TURTLES | May 01, 2007 | For: Clocks, alarm clocks, wall clocks and watches in class 014. |
| 3,112,465 | TMNT | Jul. 04, 2006 | For: Video game software; video game programs; computer game programs in class 009. |
| 3,279,830 | TMNT | Aug. 14, 2007 | For: Video game software; video game software for use with handheld electronic devices (in Int'l Class 9); video game software for use with wireless electronic |

| | | | devices (in Int'l Class 9); video game programs; video game CD-ROMS; video game Digital Versatile Disc-ROMS; interactive multimedia computer games; computer game software; computer game programs; computer game CD-ROMS; computer game Digital Versatile Disc-ROMS; electronic game programs; electronic game CD-ROMS; electronic game Digital Versatile Disc-ROMS; cartridges and cassettes containing game programs for use with hand-held video game machine; game discs and circuit boards containing game programs for use with hand-held video game machine; downloadable electronic game software; downloadable computer game software and downloadable video game software; electronic games adapted for use with television; apparatus for recording transmission or reproduction of sound or images; namely, pre-recorded audio tapes, sound recording discs, recording discs, compact discs and phonograph records featuring animated and live action images or sounds; pre-recorded video tapes featuring television programs; blank video cassette tapes; apparatus and devices for viewing |
|---|---|---|---|

| | | | |
|---|---|---|---|
| | | | prints, slides and films, namely viewers; three dimensional viewer cards of exposed cartoon and movie images; magnets; sunglasses in class 009. |
| 3,360,904 | TMNT | Dec. 25, 2007 | For: Textile goods, namely, bedsheets; bedspreads; table cloths not of paper; beach towels; towels; hand towels; washcloths in class 024. |
| 3,360,905 | TMNT | Dec. 25, 2007 | For: Sugar and confectionary, namely, bubble gum; fruit-flavored candy; gummy candies; candy, excluding chocolate candy, sucking candy; cookies; crackers; fruit ice bars; muffins; dried pasta; pizza; popped popcorn in class 030. |
| 3,370,778 | TMNT | Jan. 15, 2008 | For: Clothing, footwear and headgear, namely, cloth aprons, bandanas, bathing suits, clothing belts, children's sleepwear, boxer shorts, pants, clothing caps, costumes for use in role-playing games, Halloween costumes, children's footwear, gloves, hats, ski hats, headbands, outwear jackets, jumpsuits, mittens, neckwarmers, children's pram suits, children's raincoats, robes, socks, stockings, suspenders, sweaters, sweatshirts, T-shirts, tops, underwear and visors in class 025. |
| 3,370,779 | TMNT | Jan. 15, 2008 | For: Toys and games, namely, balloons; plastic inflated balls; sports balls; inflatable pounding bags; punching toys; inflatable toys; toy boxes; toy swim |

| | | | goggles; water squirting toys; kites; Halloween costume masks; Christmas tree ornaments; party favors in the nature of small toys; elbow pads for athletic use; knee pads for athletic use; inflatable swimming rings; inflatable wading pools; ride-on toys; roller skates; play ground equipment, namely, sandboxes; playground slides; skateboards; snow skis and ski poles; snow sleds for recreational use; snow boards; toy figures; toy action figures; action type target games; role-playing game toy play sets; playsets for use with toy action figures; miniature toy vehicles; miniature motorized toy vans; bubble making activity toys; stuffed plush toys; toy whistles; decorative wind socks; coin operated pinball games; coin operated arcade type video games; hand held unit for playing electronic games; yo-yo's; board games; puzzles; toy building blocks capable of interconnection; basketball game set containing basketball hoop, net, and basketball; play shaving kits with play shaver, shave cream and brush; children's fishing kits, consisting of plastic box, plastic worms, hooks and string for fishing in class 028. |
| --- | --- | --- | --- |

| | | | |
|---|---|---|---|
| 3,532,640 | TMNT | Nov. 11, 2008 | For: Traveling bags; namely, backpacks, wallets, umbrellas in class 018. |
| 3,532,641 | TMNT | Nov. 11, 2008 | For: Household or kitchen utensils and containers; namely, plastic bottles sold empty; melamine bowls; plates and cups; hair brushes, hair combs; cookie cutters; lunch boxes; metal cooking pans; toothbrushes; toothbrush cases; meal trays; soap cases and soap dishes; wastebaskets in class 021. |
| 5,746,311 | RISE OF THE TEENAGE MUTANT NINJA TURTLES | May 07, 2019 | For: Clothing, namely, children's sleepwear; sweatshirts; t-shirts in class 025. |
| 1,533,399 |  | Apr. 04, 1989 | For: Toys and games, namely toy figures, board games, and puzzles in class 028. |
| 1,535,255 |  | Apr. 18, 1989 | For: Paper goods and printed matter, namely toy catalogs and comic books in class 016. |
| 1,535,416 |  | Apr. 18, 1989 | For: Clothing, namely knit shirts and pajamas in class 025. |
| 1,571,013 |  | Dec. 12, 1989 | For: Fabrics, namely, sheets, pillow cases, bed spreads, comforters, blankets, pillow shams, draperies in class 024. |

| | | | |
|---|---|---|---|
| 3,112,463 |  | Jul. 04, 2006 | For: Video game software; video game programs; computer game programs; electronic game programs in class 009. |
| 3,112,464 |  | Jul. 04, 2006 | For: Video game software; video game programs; computer game programs; electronic game programs in class 009. |
| 3,112,469 |  | Jul. 04, 2006 | For: Video game software; video game programs; computer game programs in class 009. |
| 2,061,867 | GARFIELD | May 13, 1997 | For: video game machines; arcade video game machines; computer game equipment containing memory devices, namely, disks and computer game programs in class 028 |
| 2,929,375 | GARFIELD | Mar. 01, 2005 | For: Motion picture films featuring characters derived from an animated cat comic strip in class 009 |
| 2,186,737 | GARFIELD STUFF | Sep. 01, 1998 | For: mail-order services featuring clothing, clothing accessories, gift items, plush toys, household goods, printed publications, collectibles, and party goods in class 035 |
| 2,929,374 | GARFIELD | Mar. 01, 2005 | For: series of prerecorded and compact discs, all featuring characters from an animated cat comic strip in class 009 |

14

| 1,221,033 | GARFIELD | Dec. 21, 1982 | For: Dolls, Balloons, and Jigsaw Puzzles in class 028 |
|---|---|---|---|
| 1,248,358 | GARFIELD | Aug. 16, 1983 | For: Totebags in class 018 |
| 1,532,618 | GARFIELD | Apr. 04, 1989 | For: Air Fresheners in class 005 |
| 1,248,884 | GARFIELD | May 31, 1983 | For: Jewelry in class 014 |
| 1,266,347 | GARFIELD | Feb. 07, 1984 | For: Ceramic Boxes; Ceramic Cookie Jars; Ceramic Mugs; Ceramic Dishes, Ceramic Teapots; Ceramic Salt and Pepper Sets; Ceramic Planters for class 021 |
| 1,151,014 | GARFIELD | Apr. 14, 1981 | For: Syndicated Comic Strip Published Daily and Sunday in class 016 |
| 1,223,408 | GARFIELD | Jan. 11, 1983 | For: Bookmarks, Calendars, Children's Activity Books, Greeting Cards, Note Cards, Posters, Recipe Books in class 016 |
| 1,269,955 | GARFIELD | Mar. 13, 1984 | For: Clothing Items- Namely, Undershirts and Underwear in class 028. |
| 2,229,252 | BLUE'S CLUES | Mar. 02, 1999 | For: shorts, jackets, socks, sweaters, dresses, gym shorts, pajamas, pants, shirts, turtlenecks, underclothes, footwear and head wear in class 025 |
| 2,366,596 | BLUE'S CLUES | Jul. 11, 2000 | For: jewelry and watches in class 014 |

| | | | |
|---|---|---|---|
| 2,416,016 | BLUE'S CLUES | Dec. 26, 2000 | For: informational books on the topics of television and entertainment, decals in class 016 |
| 6,329,246 | BLUE'S CLUES & YOU | Apr. 20, 2021 | For: Toys, games and playthings, namely, dolls and accessories therefor, action figures, action figure play sets, character figures, character figure play sets, toy figurines, plush toys, toy vehicles and accessories therefor, children's multiple activity toys, toy building sets, children's educational toys for developing cognitive skills, ride-on toys, construction toys, parlor games, puzzles, role-playing games, card games, board games, interactive board games, electronic hand-held games for use with external display screen or monitor in class 028 |
| 6,511,805 | BLUE'S CLUES & YOU | Oct. 05, 2021 | For: Clothing, namely, shirts, t-shirts, sweatshirts, sweaters, blouses, pants, jeans, trousers, shorts, suits, underwear, pajamas, jackets, coats, vests, socks, stockings, tights, dresses, skirts, swimwear; headwear, namely, hats, caps, beanies, visors, headbands, bandanas; clothing accessories, namely, belts, ties, neckties, gloves, mittens, scarves; footwear, namely, boots, shoes, sandals, slippers; Halloween costumes in class 025 |

| 6,755,539 | BLUE'S CLUES & YOU | Jun. 07, 2022 | For: Bed linens, towels, bed sheets, pillowcases, bed blankets, comforters in class 024 |
|---|---|---|---|
| 2,897,977 | SPONGEBOB | Oct. 26, 2004 | For: clothing belts, shorts, jackets, coats, socks, gloves, pajamas, pants, shirts, headwear in class 025 |
| 2,907,153 | SPONGEBOB | Nov. 30, 2004 | For: Bags Namely Backpacks in class 018 |
| 2,530,091 | SPONGEBOB SQUAREPANTS | Jan. 15, 2002 | For: note paper, decals, and fiction books based on a television series in class 016 |
| 2,624,278 | SPONGEBOB SQUAREPANTS | Sep. 24, 2002 | For: shorts, coats, socks, footwear, clothing belts, bandannas, sweaters, dresses, gloves, gym shorts, ear muffs, neckwear, pajamas, pants, shirts, ski wear, slacks, sun visors, suspenders, turtlenecks, underclothes, vests, warm-up suits, headwear, bathrobes, beachwear in class 025 |
| 2,681,382 | SPONGEBOB SQUAREPANTS | Jan. 28, 2003 | For: linens, namely, bed blankets, comforters and bed sheets in class 024 |
| 2,764,296 | SPONGEBOB SQUAREPANTS | Sep. 16, 2003 | For: board games and activity balls in class 028 |
| 2,811,653 | SPONGEBOB SQUAREPANTS | Feb. 03, 2004 | For: audio and video recordings featuring music and animation; audio and video recordings featuring motion picture film and television programs featuring animation and music in class 009 |

| | | | |
|---|---|---|---|
| 4,475,397 | SPONGEBOB SQUAREPANTS | Jan. 28, 2014 | For: Games and playthings, namely, card games, dolls; plush dolls; action figures and accessories thereof; stand alone video game machines, stand alone audio output game machines; decorations for christmas trees; sporting articles, namely, footballs in class 028 |
| 5,069,261 | SPONGEBOB HEROPANTS | Oct. 25, 2016 | For: Entertainment software, namely, game discs and downloadable game software for use with personal computers, video game consoles, hand held gaming devices; downloadable computer games and motion pictures featuring action and adventure, downloadable via a global computer network in class 009 |
| 2,900,693 | KRABBY PATTIES | Nov. 02, 2004 | For: candy in class 020 |
| 5,625,065 | KRUSTY KRAB | Dec. 11, 2018 | For: Plastic Cake Decorations in class 020 |
| 5,682,983 | KRUSTY KRAB | Feb. 26, 2019 | For: Aquarium ornaments in class 021 |
| 7,482,474 | THE PATRICK STAR SHOW | Aug. 20, 2024 | For: Clothing, namely, shirts, t-shirts, sweatshirts, sweaters, blouses, pants, jeans, trousers, shorts, suits, underwear, pajamas, jackets, coats, vests, socks, stockings, tights, dresses, skirts, swimwear; headwear, namely, hats, caps, beanies, visors, |

| | | | |
|---|---|---|---|
| | | | headbands, bandanas; clothing accessories, namely, belts, ties as clothing, neckties, gloves, mittens, scarves; footwear, namely, boots, shoes, sandals, slippers; Halloween costumes in class 025 |
| 2,881,965 | DORA | Sep. 07, 2004 | For: Bathing suits, beachwear, coats, socks, Halloween costumes, pajamas, shirts, headwear, all marketed in connection with a children's animated television series in class 025 |
| 2,913,417 | : DORA | Dec. 21, 2004 | For: Games and playthings, namely, card games, dolls; action figures and accessories, board games; decorations for Christmas trees all marketed in connection with a children's animated television series in class 028 |
| 4,813,606 | DORA AND FRIENDS | Sep. 15, 2015 | For: decorations for Christmas trees; electronic games other than those adapted for use with tv receivers only; playing cards and card games, darts; action figures and accessories thereof; board games; golf clubs, baseballs, footballs, paddleballs, baseball bats; home video game machines and hand held units for playing electronic games for use with external display screen or monitor, dolls; amusement game machines; arcade-type electronic video games; parts and fittings for all the |

| | | | |
|---|---|---|---|
| | | | aforesaid goods in class 028 |
| 2,526,038 | DORA THE EXPLORER | Jan. 01, 2002 | For: theatrical or musical video recordings in class 009 |
| 2,721,725 | DORA THE EXPLORER | Jun. 03, 2003 | For: Printed matter, namely, note paper and loose leaf paper, series of fiction books, decals, note cards, posters, calendars in class 016 |
| 2,753,440 | DORA THE EXPLORER | Aug. 19, 2003 | For: Bathing suits, bathrobes, beachwear, clothing belts, shorts, jackets, coats, socks, footwear, bandannas, sweaters, Halloween costumes, dresses, gloves, gym shorts, ear muffs, neckwear, pajamas, pants, shirts, ski wear, slacks, sun visors, suspenders, turtlenecks, underclothes, vests, warm-up suits, headwear in class 025 |
| 2,893,599 | DORA THE EXPLORER | Oct. 12, 2004 | For: video game cartridges, video games recorded on CD-ROM for use in video game machines and computers in class 009 |
| 2,948,214 | DORA THE EXPLORER | May 10, 2005 | For: Games and playthings, namely, dolls; action figures and accessories thereof; board games; decorations for Christmas trees in class 028 |
| 4,168,244 | DORA'S EXPLORER GIRLS | Jul. 03, 2012 | For: video game machines for use with television, audio output game machines for use with television, video game cartridges, video games recorded on cd-rom for use in freestanding video game machines; and computer products, namely, game |

| | | | |
|---|---|---|---|
| | | | cartridges for computer video games and video output game machines and instructional materials sold as a unit, computer game cassettes, computer game tapes and manuals sold as a unit; musical sound recordings; theatrical sound recordings featuring animated television shows; musical video recordings; theatrical video recordings featuring animated television shows; laser discs and digital video discs/digital versatile discs ("dvd") featuring animated television shows; downloadable wireless game software; downloadable wireless entertainment software featuring animated television shows; downloadable images; and computer software for use in the design, development and execution of wireless game and entertainment programs and applications; sunglasses in class 009 |
| 2,866,999 | BOOTS | Jul. 27, 2004 | For: dolls in class 028 |
| 3,398,260 | GO DIEGO GO! | Mar. 18, 2008 | For: games and playthings, namely, card games, playing cards, dolls; action figures and accessories thereof; stand alone video game machines utilizing cd rom's, stand alone video game machines, stand alone audio output game machines, and board games; |

| | | | sporting articles, namely, baseballs, baseball bats; footballs, soccer balls; decorations for Christmas trees in class 028 |
|---|---|---|---|

16.     The U.S. registrations for the Paramount Trademarks are valid, subsisting, in full force and effect, and some are incontestable pursuant to 15 U.S.C. § 1065. The registrations for the Paramount Trademarks constitute *prima facie* evidence of their validity and of Paramount's exclusive right to use the Paramount Trademarks pursuant to 15 U.S.C. § 1057(b). True and correct copies of the U.S. Registration Certificates for the Paramount Trademarks are attached hereto as **Exhibit 1**.

17.     The Paramount Trademarks are exclusive to Paramount and are displayed extensively on Paramount Products and in marketing and promotional materials. The Paramount Trademarks are also distinctive when applied to Paramount Products, signifying to the purchaser that the products come from Paramount and are manufactured to Paramount's quality standards. Through its licensing program, Paramount has and continues to ensure that the products bearing the Paramount Trademarks are manufactured consistent with Paramount's highest quality standards.

18.     The Paramount Trademarks are famous marks, as that term is used in 15 U.S.C. § 1125(c)(1), and have been continuously used and never abandoned. The innovative marketing and product designs of Paramount Products have enabled the Dora the Explorer, SpongeBob SquarePants, TMNT, Blue's Clues, and Garfield brands ("Paramount Brands") to achieve widespread recognition and fame and have made the Paramount Trademarks some of the most well-known marks in the entertainment and consumer products industries. The widespread fame,

outstanding reputation, and significant goodwill associated with the Paramount Brands have made the Paramount Trademarks valuable assets of Plaintiffs.

19.     The Paramount Trademarks have been the subject of substantial and continuous marketing and promotion by Plaintiffs. Plaintiffs have and continue to market and promote the Paramount Products featuring the Paramount Trademarks in the entertainment industry and to consumers through traditional print media, authorized retailers, the official websites, social media sites, and point of sale material.

20.     Plaintiffs and their licensees have expended substantial time, money, and other resources in building up and developing consumer recognition, awareness and goodwill in the Paramount Trademarks for continuous use on the Paramount Products. Specifically, Plaintiffs and their licensees have expended substantial resources in advertising, promoting, and marketing the Paramount Products featuring the Paramount Trademarks. As a result of Plaintiffs' efforts, the quality of the Paramount Products, the promotional efforts for the products and designs, press and media coverage, and widespread marketing, Paramount Products bearing the Paramount Trademarks are widely recognized and exclusively associated by consumers as being high-quality products exclusively associated with and sourced from Plaintiffs. The Paramount Trademarks have achieved tremendous fame and recognition, adding to the inherent distinctiveness of the marks. As such, the goodwill associated with the Paramount Trademarks is of immeasurable value to Plaintiffs.

21.     Viacom and Paws have also registered a multitude of works related to the Dora, SpongeBob, TMNT, Blue's Clues, and Garfield franchises, and the characters embodied therein, with the U.S. Copyright Office (collectively, the "Paramount Copyrighted Works"). The registrations include but are not limited to: "Dora the Explorer: Core Refresh Guide" (U.S.

Copyright Registration No. VAu001188344), issued by the Register of Copyrights on October 22, 2014; "Spongebob Squarepants 2002 Holiday Apparel Guide" (U.S. Copyright Registration No. VAu001239971), issued by the Register of Copyrights on September 8, 2003; "Teenage Mutant Ninja Turtles - 2012 Styleguide." (U.S. Copyright Registration No. VAu001118386), issued by the Register of Copyrights on November 20, 2012; "Teenage Mutant Ninja Turtles - Property Universe Mythology Styleguide." (U.S. Copyright Registration No. VAu001211984), issued by the Register of Copyrights on May 13, 2023; "Teenage Mutant Ninja Turtles: Turtle Power! Styleguide." (U.S. Copyright Registration No. VAu001188358), issued by the Register of Copyrights on October 21, 2014; "TMNT Total Turtle Takeover: 2015 Styleguide." (U.S. Copyright Registration No. VAu001230628), issued by the Register of Copyrights on October 22, 2015; "Blue's clues style guide :fall 2003." (U.S. Copyright Registration No. VA0001239969) issued by the Register of Copyrights on September 8, 2003; and "Garfield Styleguide (2020)" (U.S. Copyright Registration No. VAu001432395), issued by the Register of Copyrights on June 2, 2021. True and correct copies of the records from the U.S. Copyright Office website for the Paramount Copyrighted Works are attached hereto as **Exhibit 2**.

22.     Among the exclusive rights granted to Plaintiffs under the U.S. Copyright Act are the exclusive rights to reproduce, prepare derivative works of, distribute copies of, and display the Paramount Copyrighted Works to the public.

23.     Since first publication, the Paramount Copyrighted Works have been used on Paramount Products and are featured on Plaintiffs' and/or their licensees' official websites.

24.     Some of the characters and character names embodied in the Paramount Copyrighted Works include, but are not limited to, the following:[2]



| | |
|---|---|
| **Dora** | |
| **Backpack** | |

[2] The table contains a non-exhaustive list of the characters embodied in the Paramount Copyrighted Works. This table is included only to provide examples of the characters found on the infringing products offered for sale or sold by Defendants. Regardless of any changes in their design, each of these characters, among others contained within Paramount's copyrighted works, have always maintained their distinctive qualities and unique elements of expression.

| | |
|---|---|
| **SpongeBob SquarePants** |  |
| **Mr. Krabs** | |
| **Leonardo** | |



| | |
|---|---|
| **Raphael** | |
| **Donatello** | |
| **Michelangelo** | |
| **Splinter** | |

| | |
|---|---|
| **Shredder** |  |
| **April O'Neil** | |
| **Krang** | |
| **Blue** | |

| **Garfield** | |
|---|---|
| |  |

25.     Paramount Products have become enormously popular and even iconic, driven by Plaintiffs' quality standards and innovative designs. Plaintiffs have invested substantial time, money, and effort in building up and developing consumer recognition, awareness, and goodwill in the Paramount Products. The Paramount Brands have become global successes and Paramount Products are among the most recognizable in the world. Paramount Products are distributed and sold to consumers through retailers throughout the U.S., including through authorized retailers in Illinois such as Target, Walmart, and Kohls, online retail websites such as www.amazon.com, licensees' websites, as well as through the official Nickelodeon store, found at https://store.nickelodeonuniverse.com.

26.     Defendants are unknown individuals and business entities who own and/or operate one or more of the e-commerce stores under the Seller Aliases identified on Schedule A and/or other seller aliases not yet known to Plaintiffs. On information and belief, Defendants reside and/or operate in foreign jurisdictions and redistribute products from the same or similar sources in those locations. Defendants have the capacity to be sued pursuant to Federal Rules of Civil Procedure 17(b).

27.     On information and belief, Defendants, either individually or jointly, offer for sale and/or sell Unauthorized Products through one or more e-commerce stores under the Seller Aliases listed in Schedule A attached hereto. Tactics used by Defendants to conceal their identities and the full scope of their operation make it virtually impossible for Plaintiffs to learn Defendants' true identities and the exact interworking of their network. If Defendants provide additional credible information regarding their identities, Plaintiffs will take appropriate steps to amend the Complaint.

## IV.     DEFENDANTS' UNLAWFUL CONDUCT

28.     The success and widespread popularity of the Paramount Brands and Paramount Products has resulted in significant counterfeiting of the Paramount Trademarks and infringement of the Paramount Copyrighted Works. Plaintiffs have implemented a brand protection program by investigating suspicious websites and online marketplace listings identified in proactive Internet sweeps. Recently, Plaintiffs have identified many fully interactive e-commerce stores offering Unauthorized Products on online marketplace platforms such as Alibaba Group Holding Ltd. ("Alibaba"), AliExpress.com ("AliExpress"), eBay Inc. ("eBay"), Etsy, Inc. ("Etsy"), and Roadget Business Pte. Ltd. ("SHEIN"), including the e-commerce stores operating under the Seller Aliases. The Seller Aliases target consumers in this Judicial District and throughout the U.S.

29.     According to a report prepared for The Buy Safe America Coalition, most infringing products now come through international mail and express courier services because of increased sales from foreign online infringers. *The Counterfeit Silk Road: Impact of Counterfeit Consumer Products Smuggled Into the United States*, prepared by John Dunham & Associates (**Exhibit 3**).

30.     Because the infringing products do not enter normal retail distribution channels, the US economy lost an estimated 300,000 or more full-time jobs in the wholesale and retail sectors alone in 2020. *Id.* When accounting for lost jobs from suppliers that would serve these retail and wholesale establishments, and the lost jobs that would have been induced by employees re-spending their wages in the economy, the total economic impact resulting from the sale of infringing products was estimated to cost the U.S. economy over 650,000 full-time jobs that would have paid over $33.6 billion in wages and benefits. *Id.* Additionally, it is estimated that the importation of infringing goods cost the U.S. government nearly $7.2 billion in personal and business tax revenues in the same period. *Id.*

31.     Furthermore, online marketplace platforms like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing infringers to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms." **Exhibit 4**, Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 40 NW. J. INT'L L. & BUS. 157, 186 (2020); *see also* report on "Combating Trafficking in Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020), attached as **Exhibit 5**, and finding that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and that "[t]he ability to rapidly proliferate third-party online marketplaces greatly complicates enforcement efforts, especially for intellectual property rights holders". Infringers hedge against the risk of being caught and having their websites taken down from an e-commerce platform by establishing multiple virtual storefronts. **Exhibit 5** at p. 22. Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, infringers can have many different profiles that can appear unrelated even though

they are commonly owned and operated. **Exhibit 5** at p. 39. Further, "[e]-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of [infringing products] and [infringers]." **Exhibit 4** at 186-187. Specifically, brand owners are forced to "suffer through a long and convoluted notice and takedown procedure only [for the infringer] to reappear under a new false name and address in short order". *Id.* at p. 161.

32.     Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target U.S. consumers using one or more Seller Aliases; offer shipping to the U.S., including Illinois; accept payment in U.S. dollars; and, on information and belief, sell Unauthorized Products to residents of Illinois.

33.     Defendants concurrently employ and benefit from substantially similar advertising and marketing strategies. For example, Defendants facilitate sales by designing the e-commerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. E-commerce stores operating under the Seller Aliases appear sophisticated and accept payment in U.S. dollars via numerous methods, including credit cards, Amazon Pay, and/or PayPal; they often include images and design elements that make it difficult for consumers to distinguish these unauthorized sites of stores from an authorized website; they use indicis of authenticity and security that consumers have come to associate with authorized retailers including the PayPal®, Visa®, and MasterCard® logos. Paramount has not licensed or authorized Defendants to use any of the Paramount Trademarks and/or to copy or distribute the Paramount Copyrighted Works, and none of the Defendants are authorized retailers of Paramount Products.

34.     Many Defendants also deceive unknowing consumers by using the Paramount Trademarks without authorization within the content, text, and/or meta tags of their e-commerce

stores, to attract and manipulate search engines into identifying the Seller Aliases as legitimate websites for Paramount Products. Other e-commerce stores operating under Seller Aliases omit using the Paramount Trademarks in the item title to evade enforcement efforts while using strategic item titles and descriptions that will trigger their listings when consumers are searching for Paramount Products.

35.     E-commerce store operators like Defendants commonly engage in fraudulent conduct when registering the Seller Aliases by providing false, misleading and/or incomplete information to e-commerce platforms to prevent discovery of their true identities and the scope of their e-commerce operation.

36.     E-commerce store operators like Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Unauthorized Products. Such seller alias registration patterns are one of many common tactics used by e-commerce store operators like Defendants to conceal their identities and the full scope and interworking of their operation, and to avoid being shut down.

37.     Even though Defendants operate under multiple fictitious aliases, the e-commerce stores operating under the Seller Aliases often share identifiers, such as templates with common design elements that intentionally omit any contact information or other information for identifying Defendants or other Seller Aliases they operate or use. E-commerce stores operating under the Seller Aliases include other notable common features such as use of the same registration patterns, accepted payment methods, check-out methods, keywords, advertising tactics, similarities in price and quantities, the same incorrect grammar and misspellings, and/or the use of the same text and images. Additionally, Unauthorized Products for sale by the Seller Aliases bear similar irregularities and indicia of being unauthorized, suggesting that the Unauthorized Products

were manufactured by and come from a common source and upon information and belief, that Defendants are interrelated.

38.     Upon information and belief, e-commerce store operators like Defendants operate in a collective and organized manner, are in frequent communication with each other, and regularly monitor and participate in QQ.com chat rooms and through websites such as sellerdefense.cn regarding tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

39.     Infringers, such as Defendants, typically operate under multiple seller aliases and payment accounts so that they can continue operation despite plaintiffs' enforcement. Upon information and belief, and as PayPal transaction logs in previous similar cases have shown, Defendants maintain off-shore bank accounts and regularly move funds from their financial accounts to off-shore accounts outside the jurisdiction of this Court, to avoid payment of any monetary judgment awarded to plaintiffs.

40.     Defendants are working to knowingly and willfully manufacture, import, distribute, offer for sale, and/or sell Unauthorized Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Plaintiffs, have knowingly and willfully used, and continue to use, the Paramount Trademarks and/or copies of the Paramount Copyrighted Works in connection with the advertisement, distribution, offering for sale, and/or sale of Unauthorized Products into the U.S. and Illinois over the Internet.

41.     Defendants' unauthorized use of the Paramount Trademarks and/or Paramount Copyrighted Works in connection with the advertising, distribution, offering for sale, and sale of Unauthorized Products, including the sale of Unauthorized Products into the U.S., including

Illinois, is likely to cause, and has caused, confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiffs.

## COUNT I
## TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

42.     Plaintiffs hereby re-allege and incorporate by reference the allegations set forth in the preceding paragraphs.

43.     This is a trademark infringement action against Defendants[3] based on their unauthorized use in commerce of counterfeit imitations of the Paramount Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of the Unauthorized Products. The Paramount Trademarks are highly distinctive marks. Consumers have come to expect the highest quality from Paramount Products offered, sold, or marketed under the Paramount Trademarks.

44.     Certain Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products using counterfeit reproductions of the Paramount Trademarks without Plaintiffs' permission.

45.     Plaintiffs' U.S. registrations for the Paramount Trademarks are in full force and effect. Upon information and belief, certain Defendants have knowledge of Paramount's rights in the Paramount Trademarks and are willfully infringing and intentionally using infringing and counterfeit versions of the Paramount Trademarks. Those Defendants' willful, intentional, and unauthorized use of the Paramount Trademarks is likely to cause, and is causing, confusion, mistake, and deception as to the origin and quality of the Unauthorized Products among the general public.

---

[3] Count I applies to all Defendants who infringed the Paramount Trademarks, as outlined in Schedule A attached hereto.

46.     Certain Defendants have manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale, and/or sold the Unauthorized Products to the purchasing public in direct competition with Paramount and the Paramount Products, in or affecting interstate commerce, and/or have acted with reckless disregard of Plaintiffs' rights in and to the Paramount Trademarks through their participation in such activities.

47.     Certain Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

48.     Plaintiffs have no adequate remedy at law, and if certain Defendants' actions are not enjoined, Plaintiffs will continue to suffer irreparable harm to their reputation and the goodwill of the Paramount Trademarks.

49.     The injuries and damages sustained by Plaintiffs have been directly and proximately caused by certain Defendants' wrongful reproduction, use of advertisement, promotion, offering to sell, and/or sale of Unauthorized Products.

## COUNT II
## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

50.     Plaintiffs hereby re-allege and incorporate by reference the allegations set forth in the preceding paragraphs.

51.     Certain Defendants'[4] promotion, marketing, offering for sale, and sale of Unauthorized Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Plaintiffs or the origin, sponsorship, or approval of the Unauthorized Products by Plaintiffs.

---

[4] Count II applies to all Defendants who infringed the Paramount Trademarks, as outlined in Schedule A attached hereto.

52.     By using the Paramount Trademarks in connection with the offering for sale and/or sale of Unauthorized Products, certain Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Unauthorized Products.

53.     Certain Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Unauthorized Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

54.     Plaintiffs have no remedy at law and will continue to suffer irreparable harm to its reputation and the associated goodwill of the Paramount Brands if certain Defendants' actions are not enjoined.

## COUNT III
## COPYRIGHT INFRINGEMENT OF UNITED STATES COPYRIGHT REGISTRATIONS (17 U.S.C. §§ 106 and 501)

55.     Plaintiffs hereby re-allege and incorporate by reference the allegations set forth in the preceding paragraphs.

56.     The Paramount Copyrighted Works constitute original works and copyrightable subject matter pursuant to the Copyright Act, 17 U.S.C. § 101, *et seq*.

57.     Plaintiffs own the Paramount Copyrighted Works. The Paramount Copyrighted Works are protected by copyright registration numbers which were duly issued to Plaintiffs by the U.S Copyright Office. At all relevant times, Plaintiffs have been, and still are, the owners of all rights, title, and interest in the Paramount Copyrighted Works, which have never been assigned, licensed, or otherwise transferred to Defendants. The Paramount Products include a copyright notice advising the general public that the Paramount Products are protected by the Copyright Laws of the U.S.

58.     Upon information and belief, the Paramount Copyrighted Works are published on the internet and available to Defendants online. As such, Defendants had access to the Paramount Copyrighted Works via the internet.

59.     Without authorization from Plaintiffs, or any right under the law, certain Defendants[5] have deliberately copied, displayed, distributed, reproduced, and/or made derivative works incorporating the Paramount Copyrighted Works on e-commerce stores operating under the Seller Aliases and the corresponding Unauthorized Products. Certain Defendants' derivative works are virtually identical to and/or are substantially similar to the look and feel of the Paramount Copyrighted Works. Such conduct infringes and continues to infringe the Paramount Copyrighted Works in violation of 17 U.S.C. § 501(a) and 17 U.S.C. §§ 106 (1)–(3), (5).

60.     Certain Defendants reap the benefits of the unauthorized copying and distribution of the Paramount Copyrighted Works in the form of revenue and other profits that are driven by the sale of Unauthorized Products.

61.     Certain Defendants have unlawfully appropriated Plaintiffs' protectable expression by taking material of substance and value and creating Unauthorized Products that capture the total concept and feel of the Paramount Copyrighted Works, including the distinctive characters embodied therein.

62.     On information and belief, the Defendants' infringement has been willful, intentional, purposeful, and in disregard of and with indifference to Plaintiffs' rights.

63.     Certain Defendants, by their actions, have damaged Plaintiffs in an amount to be determined at trial.

---

[5] Count III applies to all Defendants who infringed the Paramount Copyrighted Works, as outlined in Schedule A attached hereto.

64.    Certain Defendants' conduct is causing and, unless enjoined and restrained by this Court, will continue to cause Plaintiffs great and irreparable injury that cannot fully be compensated or measured in money. Plaintiffs have no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Plaintiffs are entitled to a preliminary and permanent injunction prohibiting further infringement of the Paramount Copyrighted Works and ordering that the Defendants who infringe the Paramount Copyrighted Works destroy all unauthorized and/or infringing copies and reproductions of the Paramount Copyrighted Works.

**PRAYER FOR RELIEF**

WHEREFORE, Paramount prays for judgment against Defendants as follows:

1)    That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

      a.  using the Paramount Trademarks or any reproductions, counterfeit copies or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a Paramount Product or is not authorized by Plaintiffs to be sold in connection with the Paramount Trademarks;

      b.  reproducing, distributing copies of, making derivative works of, or publicly displaying the Paramount Copyrighted Works in any manner without the express authorization of Plaintiffs;

      c.  passing off, inducing, or enabling others to sell or pass off any products as Paramount Products or any other product produced by Plaintiffs, that are not Plaintiffs' or not produced under the authorization, control, or supervision of

Plaintiffs and approved by Plaintiffs for sale under the Paramount Trademarks and/or bearing unauthorized copies of the Paramount Copyrighted Works;

d. committing any acts calculated to cause consumers to believe that Defendants' Unauthorized Products are those sold under the authorization, control, or supervision of Plaintiffs, or are sponsored by, approved by, or otherwise connected with Plaintiffs;

e. further infringing the Paramount Trademarks and/or Paramount Copyrighted Works and damaging Plaintiffs' goodwill; and

f. manufacturing, shipping, delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiffs to be sold or offered for sale, and which bear any of the Paramount Trademarks, or any reproductions, counterfeit copies or colorable imitations thereof and/or which bear the Paramount Copyrighted Works;

g. using, linking to, transferring, selling, exercising control over, or otherwise owning the Seller Aliases, Defendant product listings, or any other domain name or online marketplace account that is being used to sell products or inventory not authorized by Plaintiffs which bear the Paramount Trademarks or which are derived from the Paramount Copyrighted Works; and

h. operating and/or hosting websites at the Seller Aliases, and any other domain names registered to or operated by Defendants that are involved with the distribution, marketing, advertising, offering for sale, or sale of products or inventory not

authorized by Plaintiffs which bear the Paramount Trademarks, or which are derived from the Paramount Copyrighted Works;

2) Entry of an Order that, upon Plaintiffs' request, those with notice of the injunction, including without limitation, any websites and/or online marketplace platforms such as Alibaba, AliExpress, eBay, Etsy, and SHEIN, shall disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using the Paramount Trademarks and/or bearing unauthorized copies of the Paramount Copyrighted Works;

3) That Defendants infringing the Paramount Trademarks account for and pay to Plaintiffs all profits realized by those Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the Paramount Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

4) In the alternative, that Plaintiffs be awarded $2,000,000 in statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) for each and every use of the Paramount Trademarks;

5) As a direct and proximate result of certain Defendants' infringement of the Paramount Copyrighted Works, Plaintiffs are entitled to damages as well as those Defendants' profits, pursuant to 17 U.S.C. § 504(b);

6) Alternatively, and at Plaintiffs' election prior to any final judgment being entered, Plaintiffs are entitled to the maximum amount of statutory damages provided by law, $150,000 per work infringed pursuant to 17 U.S.C. § 504(c), or for any other such amount as may be proper pursuant to 17 U.S.C. § 504(c);

7) Plaintiffs are further entitled to recover their attorneys' fees and full costs for bringing this action pursuant to 17 U.S.C. § 505 and 15 U.S.C. § 1117(a); and

8) Award any and all other relief that this Court deems just and proper.

Dated this 12th day of January 2026.             Respectfully submitted,


/s/ Martin F. Trainor
Martin F. Trainor
Sydney Fenton
Alexander Whang
Elizabeth J. Banegas
TME Law, P.C.
10 S. Riverside Plaza
Suite 875
Chicago, Illinois 60606
708.475.1127
martin@tme-law.com
sydney@tme-law.com
alexander@tme-law.com
elizabeth@tme-law.com

*Counsel for Plaintiffs Viacom International Inc. and Paws, Inc.*